Insi/EX, J,
This is an action instituted under the provisions of the 3d section of the act of the Legislature of the 12th March, 1818.
The police jury of the parish of St. James, having decreed the opening of a public road through the plantation of the plaintiff, she applied to the District Court of that parish for an injunction to restrain the execution of the decree, on the ground that she is aggrieved by it, both with respect to the course of the road across her lands, and the assessment of the damages.
The petition avers that for the last sixteen years there has existed a public road, laid out under the authority of the State, to serve precisely *309 the same purposes, and connect the same points as the road now projected and here complained of; that that road and the soil on which it runs belong to the parish; that it is shorter and more direct than the’one proposed, and that if it is in bad condition, it is because 'hothihg’Fait'* ever been done by the parish authorities to keep it in repair; that with proper repairs it may be made sufficient for all the wants of the public. She, therefore, concludes, that in the premises there is no such ground o| necessity for the public good as to justify the 1 forced expropriation of her property in the way proposed, and that the proceedings of the police jury are uncalled for, and as to her oppressive.
The answer claims for the police jury the right to open as many roads as their wisdom may dictate, ahd the public wants reqüiré. It then goes on to join issue with the plaintiff upon the very question of the sufííjiency of the State road for the wants of the public, and of the existence of such a necessity for the public good, as to call for a new forced exprópriation for another road.
By our law, property is an absolute right, and the action of the owner of particular property over it is such as is nobly expressive by the 'terpijs of the Roman law: 8ui quisque rei moderator et arbiter. Hó can usé and even abuse it: utendi el abutendi. The only restriction to that right, growing out of the first law of society, being that the owner of particular property may be divested of it, when it becomes necessary for purposes of public utility; but when such expropriation is made improperly and., illegally, to the injury of the owner, he has his legal redress, and this remedy, under the Constitution and the laws, the plaintiff now invokes.’
The only question involved'in this controversy,1 add'‘there can be ho other, except the one of indemnification, which it is unnecessary to pass' upon, is whether the expropriation of the plaintiff’s property is necessary for the general utility.
In order to elucidate this Question, a mass ’of testimony was adduced on both sides, and heard without objection; and the Court below, upon the issues raised and the proof, rendered a decision adverse to the plaintiff, which, after a careful consideration, of the facts and.the law, we;are unable to affirm.
We have already stated upon what principle the compulsory transfer of private property is justifiable for purposes of püblic. utility:, it ig only when it becomes necessary, and when it is resisted, it is so judicially determined. See Constitution of 1864, Arts. 109 and 110; Tit. 7, Arts. 489-2604, C. C.; Toullier, vol. 3, p. 173, l 264.
The contingency to warrant such expropriation must be evident and imperious, as the law decrees property too sacred and inviolable to'sanction the expropriation of it, except it be necessary for public purposes. , ,
As to such necessity, Toullier, vol. 3, p. 170, $ 258, comnienting on Art. 545 of the Napoleon Code, taken in connection with the law‘of March, 1810, while reflecting upon the special provisions of that law, lays down generally a sensible doctrine, which, in our mode of proceeding in oases like this, our courts should sanction as conclusive to the maintenance of private rights, so far as they can be upheld with’a due regard to the public wants. That author observes:
“Mais iei commence, pour les propriétaires, l’exercice des droits pro- *310 pres a les garantir, soit du despotisme des gens de l’art, soit des décisions irréfléchies ou injustes de l’autorité mSme.
*********** lis peuvent soutenir que l’exécution de cette ordonnanee ne rend pas nécessaire la cession de leurs fonds; qu’il serait plus expédient et moins cohteux de passer ailleurs que sur leurs héritages; que sur la direction projetée par ménagement ou complaisance pour les Uns, dégénérerait en vexations pour les autres.
“Ufautdonc que les particuliers soient mis en état de faire de ces moyens, et des' autres qui peuvent se présenter, l’objet d’une discussion légitime, afin d’éclairer l’administration, avant d’appliquerl’expropriation a leurs propriétés.
“Cette application ne peut étre faite qu’aprés que les parties intéressées ont été mises en état d’y former leurs contredits.”
As a question of fact, we do not find from the testimony which we have duly weighed, any necessity for the expropriation of the plaintifi’s land for public use.
The parish is already the owner of a road, running directly and in a straight line from the Vacherie settlement to the river Mississippi — the point to be attained, which is proved to have originally answered all the purposes of the public, and to have been a good and sufficient road, but it has for years been allowed by the defendants, in violation of a plain duty, to go without repairs.
Indeed, it does not appear that anything has been done since the State road was originally opened to maintain it in its primitive condition.
In the low alluvial lands that border on the Mississippi river, no road can remain good, except by constant attention and at considerable cost. In the case under consideration, the neglect seems to have been absolute and persistent, yet the testimony of competent engineers, contained in the record, shows that this road can be made a good one, and it indicates the means and cost of making it so.
No one questions the right of police juries to open as many roads as may be necessary for the public use; but the action of these bodies is still controlled by the law, and to justify it, so as to affect individual rights, the essential concomitant of necessity for public purposes, must, form the basis of such action, with which the courts will not interfere, except where it trenches illegally upon the vested rights of citizens.
The projected road would sever the plaintiff’s plantation, which would necessarily prove very injurious to her, but this consideration would not be the weight of a feather in the scale, if the road through her land was really necessary for public purposes. This we do not consider it to be, whilst there is a State road that could be made passable at all times, at less cost than would be incurred in providing the new road.
We think the plaintiff, in injunction, is entitled to relief.
It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed; and, proceeding to give such judgment as in our opinion should have been rendered, it is ordered, adjudged and decreed that the injunction issued be made perpetual, and that the defendant and appellee pay the costs in both courts,